[Cite as *Baxter v. Baxter*, 2011-Ohio-4034.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

REBECCA BAXTER

    Appellant

    v.

KEVIN J. BAXTER

    Appellee

C.A. No.      10CA009927


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    03NU061737

DECISION AND JOURNAL ENTRY

Dated: August 15, 2011

WHITMORE, Judge.

{¶1}  Plaintiff-Appellant, Rebecca Cones (f/k/a Rebecca Baxter), appeals from the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, denying her motion to reallocate parental rights and responsibilities.  This Court affirms.

I

{¶2}  Rebecca Cones ("Mother") and Kevin Baxter ("Father") petitioned the court for dissolution of their marriage in early 2003.  The trial court granted their dissolution, which incorporated a separation agreement and shared parenting plan for their only child, Kevin Daly Baxter ("Son").  The parties agreed that Mother was the primary residential parent and legal custodian of Son.  In July 2005, Mother filed a "Notice of Intent to Relocate" pursuant to the parties' shared parenting plan, stating that she was relocating to Austin, Texas.  She simultaneously filed a motion to modify their shared parenting plan and/or reallocate their parenting rights in which she requested that Son be permitted to move with her, her new

husband, and their family to Texas. Father opposed the motion, and the trial court held a hearing, after which it denied Mother's motion. The trial court concluded that a change in circumstances had occurred, but that Mother had not met her burden of establishing that the benefits that Son would gain by moving to Texas with his mother, step-father, step-sister, and newly born half-brother would be outweighed by the harm such a move would cause him. The court specifically noted that Son was well adjusted to his current school, home and community and enjoyed the benefit of having the extended family of both Mother and Father living nearby. In turn, the trial court designated Father as Son's residential parent and legal custodian and awarded Mother "liberal visitation." Mother appealed, but her appeal was dismissed as her appellate brief was not timely filed. *Baxter v. Baxter* (Dec. 13, 2006), 9th Dist. No. 06CA008977.

{¶3} Since that time, Father sought and received an upward deviation in child support, which Mother contested. Mother also sought to reallocate parental rights on multiple occasions, the most recent of which was filed in August 2009 and serves as the basis of this appeal. The trial court bifurcated the matter, taking evidence over four days in March 2011 solely on the issue of whether there had been a change in circumstances pursuant to R.C. 3109.04(E)(1)(a) before considering, if necessary, matters related to the best interests of the child. Mother's motion to modify child support was stayed pending a determination of the underlying matter. Based on testimony and documents presented at the hearings and an in camera interview with Son, the trial court concluded that there was not a change in circumstances since the time Father was named the residential parent of Son.

{¶4} Mother timely appealed from the trial court's decision, but this Court dismissed her appeal because a motion for attorney fees remained pending before the trial court. *Baxter v.*

*Baxter* (June 30, 2010), 9th Dist. No. 10CA009822. After the trial court held a hearing and granted Father's motion for attorney fees, Mother again appealed, placing this matter properly before this Court for review.

II

Assignment of Error

"THE TRIAL COURT'S DECISION THAT THE UNCONTROVERTED EVIDENCE DID NOT CONSTITUTE A CHANGE IN CIRCUMSTANCES IN COMPLIANCE WITH OHIO REV. CODE § 3109.04(E)(1)(a) IS CONTRARY TO THE MANIFEST WEIGHT OF EVIDENCE AND AN ABUSE OF DISCRETION."

**{¶5}** In her sole assignment of error, Mother argues that the trial court erred in concluding that there had been no change in circumstances under the terms of R.C. 3109.04(E)(1)(a). We disagree.

**{¶6}** Custody determinations will not be reversed on appeal absent an abuse of discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74. An abuse of discretion implies that "the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. Given the delicate nature of the proceeding, a trial court's determination in custody matters "should be accorded the utmost respect" because "[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller*, 37 Ohio St.3d at 74. In the face of a manifest weight challenge, however, this Court must determine if the factual conclusions of the trial court are supported by competent, credible evidence. *Maxwell v. Maxwell*, 9th Dist. No. 07CA0047, 2008-Ohio-1324, at ¶6.

**{¶7}** Pursuant to R.C. 3109.04(E)(1)(a), a trial court cannot modify an existing allocation of parenting rights and responsibilities "unless it finds, based on facts that have arisen

since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child[ or] the child's residential parent *** and that the modification is necessary to serve the best interest of the child."  The Ohio Supreme Court has held that the requisite change of circumstances "must be a change of substance, not a slight or inconsequential change."  *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418.  The statute is intentionally designed to require a significant change in order "to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the child a 'better' environment." Id., quoting *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416.  Thus, it "attempt[s] to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment."  *Davis*, 77 Ohio St.3d at 418, quoting *Wyss*, 3 Ohio App.3d at 416.

{¶8}    Mother argues that the trial court's decision is against the manifest weight of the evidence because the evidence demonstrated that, since the parties divorced: (1) the previously tenuous relationship between Father and Son is now much stronger; (2) Father has not maintained the same school district for Son, which was a "primary factor" in the trial court's decision to name him residential parent of Son; (3) Son now has a four-year-old half-brother with whom he has built a loving sibling relationship; (4) Son is now four years older and has expressed a desire to live with Mother in Texas; and (5) Son has developed problems sleeping which caused Father to give him both unauthorized prescription and over-the-counter sleeping medications.

{¶9}    Both Mother and Father presented several witnesses in support of their respective positions as to whether a change in circumstances had occurred since the trial court last

addressed this issue in 2006. Mother is correct in her assertion that the uncontroverted evidence at the 2010 hearing demonstrated that the bond between Father and Son is stronger since Father had become Son's residential parent in 2006. This "change" as Mother would characterize it, however, is the intended result of the trial court's decision in 2006 to award custody to father. That is, the trial court noted in its 2006 journal entry that if Son moved to Texas with Mother and her new family, it could "potentially destroy[ Son's] relationship with *** [F]ather." The court further noted that the relationship between Mother and Son would be "less at risk" if there were a geographic distance between the two, and the record reveals that is, in fact, the case, as Mother testified she and Son talk almost daily and remain close to one another, despite her move. Thus, the trial court granted custody to Father, in part, to aid in maintaining and further developing the relationship between Father and Son. It stands to reason, then, that the desired result from the trial court's initial determination in a custody challenge cannot later serve as the basis for a change in circumstances. See, e.g., *In re Schwendeman*, 4th Dist. No. 06CA33, 2007-Ohio-815, at ¶28 (rejecting appellant's claim that there was a change in circumstances where the trial court had anticipated, as a result of its previous order, that there would be a "negative impact" of a temporary nature when the child moved from grandparent's care into father's care).

{¶10} Mother's claim that Father has breached his agreement to keep Son in the same school district is similarly unfounded. The record reveals that, at the time the 2006 custody determination was made, Father had committed to keeping Son in the same district to finish out the school year, which he did. Son returned to the same school system the next year, despite Father incurring an out-of-district tuition expense of approximately $8,400. The next year, however, out-of-district tuition was expected to increase another five to ten percent. Father consulted Mother on the topic and asked if she would assist in making the tuition payment for

fifth grade, but she declined. Though Mother felt at the time that "[Son] would adjust very well to a new school and new friends," she wanted that adjustment to occur to a new school in Texas, not in Ohio. Unable to afford the out-of-district tuition on his own, Father enrolled Son in the local parochial school for fifth grade. Concerned about the financial future of the school and Son's options for high school should he remain there, Father open-enrolled Son in the nearby public school for sixth grade, where siblings of both Father and Mother had children attending. Son has remained in that same school for sixth and seventh grade. The trial court's order stated only that Son was "adjusted to his current residence, his current school, and his current community" and made no mention of any requirement that Father keep Son in the same district for the duration of his schooling. Moreover, the record reveals that Mother was kept abreast of the necessity for changes in Son's schooling and failed to raise any concern with Father on the matter until filing the underlying motion, at which point Son had been in the same school system for two consecutive years and is expected to remain there.

{¶11} Next we consider Mother's assertion that a material change in circumstances has occurred because Son has now developed a strong sibling relationship with his four-year-old step-brother and has reached an age of maturity at which he could articulate to the court that he wishes to live with Mother in Texas. Neither of these factors, however, constitute "facts that have arisen since the prior decree or that were unknown to the court at th[at] time." See R.C. 3109.04(E)(1)(a). The trial court's 2006 entry acknowledges both that Mother had a "commitment to her new life [and] new baby," thus anticipating that Son would soon have a half-sibling with whom, ideally, he would ultimately build a sibling bond. Notwithstanding the trial court's knowledge of this fact, Mother did not demonstrate how this additional relationship constituted a "substantial" change of circumstances, as the Supreme Court has interpreted the

statute to require. *Davis*, 77 Ohio St.3d at 418. Similarly, the trial court's 2006 entry also noted that, according to the guardian ad litem's report issued at the time, Son had expressed a desire to reside with Mother in Texas. That Son continues to have that same desire at this point does not constitute a change in circumstances. Moreover, this Court has previously rejected the argument that a change in age coupled with a desire to live with a different parent, absent any other factors bearing on the circumstances of the child or the child's residential parent, constitutes a per se change in circumstances. *Pryor v. Hooks*, 9th Dist. No. 25294, 2010-Ohio-6130, at ¶10. Compare *Pellettiere v. Pellettiere*, 2d Dist. No. 23141, 2009-Ohio-5407, at ¶20-22 (affirming the trial court's decision that there was change in circumstances based on child's maturing age, as well as other factors such as: child's strong desire to live with mother; evidence of intensifying feelings of detachment from father; articulate and reasoned positions in support of child's desire to live with mother; and express statements on why she no longer wanted to live with father). In addition, consideration of a child's desire to live with one parent over another typically goes to a determination of what is in the child's best interest, not whether there was a change in circumstances. See R.C. 3109.04(B)(1); R.C. 3109.04(F)(1)(a). See, also, *Doerfler v. Doerfler*, 9th Dist. No. 06CA0021, 2006-Ohio-6960, at ¶34-36 (considering children's wishes to remain with mother under the best interest prong of R.C. 3109.04(E)(1)(a)).

{¶12} To the extent that Mother alleges that Father has provided Son with unauthorized prescription and over-the-counter sleeping aides, the record reveals that there was conflicting evidence presented on this issue. We note, however, that the trial court was in the best position to weigh the credibility of the witnesses on this issue, particularly having conducted an in camera interview with Son, in addition to hearing Father and Mother's testimony on the topic. *Holcomb v. Holcomb* (Sept. 26, 2001), 9th Dist. No. 01CA007795, at *3 (acknowledging the presumption

that the trial court's findings are correct where credibility is at issue, given that the court is "able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony"). Having done so, the trial court concluded that there was insufficient evidence presented in support of Mother's claim and further, that there was "no evidence" as to the effect the use of prescription or non-prescription sleeping aid medication might have had on Son. Moreover, Mother admitted to being aware of the incident for more than two years and never raised it as a concern to Father. Thus, we agree with the trial court's conclusion that Mother failed to demonstrate that her assertion, even if true, equates to a substantial change in circumstances.

{¶13} Because there was competent, credible evidence to support the trial court's finding that there was not a change in circumstances since the prior decree naming Father the residential parent of Son, the trial court did not abuse its discretion in denying Mother's motion to reallocate parental rights in this case. Accordingly, Mother's sole assignment of error is overruled.

III

{¶14} Mother's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT


BELFANCE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

ROGER L. KLEINMAN, Attorney at Law, for Appellant.

JOEL D. FRITZ, Attorney at Law, for Appellee.